**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| IN RE: ) | CASE NO.: | **13-02676-jw** |
| ) | | |
| WILLIAM A. GALLOWAY, JR., ) | Chapter 11 | |
| Last four digits of SSN 1580 ) | | |
| ) | | |
| Debtor. ) | | |
| ) | | |

**FIRST AMENDED DISCLOSURE STATEMENT PURSUANT**
**TO SECTION 1125 OF THE BANKRUPTCY CODE**
**RELATING TO PLAN OF REORGANIZATION**

Beaufort, South Carolina

December 9, 2013

PHILIP FAIRBANKS, ESQ., P.C.
Philip Fairbanks     DC ID # 756
1214 King Street
Beaufort, SC 29902
Telephone: (843) 521-1580
Telefax: (843) 521-1590
*Counsel for the Debtor*

# FIRST AMENDED DISCLOSURE STATEMENT

### A.  GENERAL INTRODUCTION

On May 4, 2013, William Allen Galloway, Jr., (the "Debtor" or "Debtor-in-Possession") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq*. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of South Carolina (the "Bankruptcy Court"), bearing Case No. 13-02676-jw.

The Honorable John E. Waites, United States Bankruptcy Judge, presides over the Debtor's bankruptcy case (referred to as the "Chapter 11 Case" or the "Case" when applicable). Neither an Official Committee of Unsecured Creditors nor a Chapter 11 trustee was appointed in the Chapter 11 Case. The Debtor continues in possession of his property and the management of his business and affairs as a "debtor in possession" pursuant to sections 1107 and 1108 of the Bankruptcy Code.

On October 28, 2013, the Debtor has filed his "Plan of Reorganization Pursuant to Section 1121(a) of the Bankruptcy Code" (the "Plan"). The Plan sets forth the proposed reorganization of the Debtor's Chapter 11 estate (the "Estate") and the distribution of recoveries to creditors (collectively, the "Creditors") of the Debtor's Estate. This FIRST AMENDED DISCLOSURE STATEMENT is submitted pursuant to § 1125 of the Bankruptcy Code in order to provide information of the kind necessary to enable a hypothetical reasonable investor to make an informed judgment in the exercise of his/her/its right to vote on the Plan.

The Debtor is the proponent of the Plan. Upon approval of this FIRST AMENDED DISCLOSURE STATEMENT by the Bankruptcy Court, creditors of the Debtor allowed to vote on the Plan will be mailed a final copy of the Plan, together with a ballot and a copy of the Bankruptcy Court's Order Approving the FIRST AMENDED DISCLOSURE STATEMENT and Fixing Time for Filing Acceptances or Rejections of Plan, Combined with Notice Thereof (the "Notice"). The Notice will provide the deadline for filing ballots, objections to the Plan, and the date of the Confirmation Hearing on the Plan.

### B.  PURPOSE OF FIRST AMENDED DISCLOSURE STATEMENT

The Debtor provides this FIRST AMENDED DISCLOSURE STATEMENT in order to permit eligible parties to make an informed decision in voting to accept or reject the Plan. The FIRST AMENDED DISCLOSURE STATEMENT is presented to all Creditors in order to satisfy the requirements of § 1125 of the Bankruptcy Code. Section 1125 requires a DISCLOSURE STATEMENT to provide information sufficient to enable a hypothetical and reasonable investor, typical of the Creditors, to make an informed judgment whether to accept or reject the Plan. This FIRST AMENDED DISCLOSURE STATEMENT may not be relied upon for any purpose other than that described above.

This FIRST AMENDED DISCLOSURE STATEMENT describes:

● The Debtor;
● How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.,* what you will receive on your claim or equity interest if the Plan is confirmed);

- Who can vote on or object to the Plan;
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan;
- Why the Debtor in Possession believes the Plan is feasible, and how treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation; and,
- The effect of confirmation of the Plan.

BE SURE TO READ THE PLAN AS WELL AS THE FIRST AMENDED DISCLOSURE STATEMENT. THIS FIRST AMENDED DISCLOSURE STATEMENT DESCRIBES THE PLAN, BUT IT IS THE PLAN ITSELF THAT WILL, IF CONFIRMED, ESTABLISH YOUR RIGHTS.

NO REPRESENTATIONS CONCERNING THE DEBTOR OR THE VALUE OF HIS PROPERTY ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS FIRST AMENDED DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OF THE PLAN OTHER THAN AS CONTAINED IN THIS FIRST AMENDED DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR, WHO WILL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.

ALTHOUGH AN EFFORT HAS BEEN MADE TO BE AS ACCURATE AS POSSIBLE UNDER THE CIRCUMSTANCES, THE INFORMATION CONTAINED IN THIS FIRST AMENDED DISCLOSURE STATEMENT HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT OR INDEPENDENT REVIEW. ACCORDINGLY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS ACCURATE OR COMPLETE, ALTHOUGH ALL SUCH INFORMATION IS ACCURATE TO THE DEBTOR'S BEST KNOWLEDGE, INFORMATION AND BELIEF.

THIS FIRST AMENDED DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN. EACH CREDITOR WHO IS ENTITLED TO VOTE ON THE PLAN IS URGED TO REVIEW THE PLAN PRIOR TO CASTING ITS VOTE. ADDITIONALLY, THE SCHEDULES OF THE ASSETS AND LIABILITIES OF THE DEBTOR, AS OF THE PETITION DATE (COLLECTIVELY, AS MAY BE AMENDED FROM TIME TO TIME, THE "SCHEDULES"), ARE ON FILE WITH THE CLERK OF THE BANKRUPTCY COURT AND MAY BE INSPECTED BY INTERESTED PARTIES DURING REGULAR BUSINESS HOURS.

**C. DEFINED TERMS**

Most words or phrases used in this FIRST AMENDED DISCLOSURE STATEMENT shall have their usual and customary meanings. Terms used in the FIRST AMENDED DISCLOSURE STATEMENT shall have the same meaning as used in the Plan. Words or phrases used in the context of the Plan and FIRST AMENDED DISCLOSURE STATEMENT with initial capital letters shall have the definitions as set forth in the Plan. Unless otherwise defined, the terms used in this FIRST AMENDED DISCLOSURE STATEMENT shall have the same meaning as in the Bankruptcy Code or Rules, as amended.

**D. BRIEF OVERVIEW OF THE DEBTOR, CLAIMS AGAINST THE DEBTOR, AND THE PLAN**

   **1. <u>Description of the Debtor</u>**

The Debtor-in-Possession is an individual whose assets consists of real property held in his individual name located at 80 Pleasant Point Drive, Ladys Island, Beaufort County, SC 29907, comprising his landscaping business property and principal residence. This property has a value of approximately $200,000.00 according to Debtor's best estimate, and is encumbered by liens totaling approximately $277,410.00.

The Debtor's other liabilities consist of unpaid property taxes of $5,411.40, a debt secured by landscaping business equipment in the amount of $3,115.71, and various unsecured debts of less than $5,000.00 each. Debtor is current in his income taxes, and all other taxes, except for the aforementioned property taxes, which are treated in the proposed Plan.

   **2. <u>Reasons for the Chapter 11 Filing</u>**

The economic downturn beginning in 2007-08 resulted in a declining demand for landscaping services such as those provided by the Debtor's landscaping business, which was established in 2005. As a result, that business experienced declining revenues and Debtor was unable to meet his secured debt service requirements, primarily mortgage payments to Deutsche Bank, which resulted in the accumulation of a substantial arrearage balance.

As noted, other tax and non-tax debt obligations are relatively small, comprising less than $15,000.00 in total. The Debtor filed this Chapter 11 Case to efficiently liquidate the several claims against him, to devise an efficient and orderly plan to satisfy such claims from his future disposable income, and to restructure the mortgage debt on his business and residential real property in order to retain the collateral and continue to operate his landscaping business and retain his home, using a combination of future disposable income and "new value" capital contributions from family members.

   **3. <u>The Proposed Reorganization of the Debtor Pursuant to the Plan</u>**

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

<u>UNCLASSIFIED CLAIMS</u>  Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Debtor has not placed the following claims in any class:

(i) *Statutory Fees:*   Debtor will have administrative claims for fees due the Office of the United States Trustee in an amount estimated to be $375 per quarter as set forth in 11 U.S.C.§ 1930. All statutory fees must be kept current.

(ii) *Administrative Expenses:*   Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case which are allowed under §507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within

twenty (20) days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

Debtor anticipates an administrative claim for his attorney, subject to approval by the Court pursuant to 11 U.S.C. § 330, in an amount not to exceed $10,000.00.

The Debtor believes he will have sufficient funds on hand to satisfy any Allowed Administrative Claims including Statutory Fees and Expense Claims in full when due.

CLASSIFIED CLAIMS    The following is a general breakdown of the claims against the Debtor. This summary of claims is for informational purposes only and is without prejudice to the debtor or the right of any other party in interest to object to the claim in whole or in part:

(i)   PRIORITY CLAIMS - CLASSES 1 and 2

*Priority claims* (Class 1) are referred to in §507(a)(1)(4)(5)(6) and (7) of the Code and are required to be placed in classes. The Code further requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment. Further, the Debtor believes that any Priority Non-Tax claims will be nonexistent or *de minimis.*

*Priority tax claims* (Class 2) are unsecured income, employment, and other taxes described by §507(a)(8) of the Code. Unless the holder of such a §507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding five years from the date of order of relief.

Debtor has identified one Allowed Priority Tax Claims in the amount of $5,411.40 for property taxes owed to Beaufort County (§507(a)(8)(b)).

The Plan proposes making monthly payments in the amount of $105.00, which includes interest of 6% per annum, beginning on the effective date, to satisfy the Class 2 claimant, Beaufort County.

(ii)   SECURED CLAIMS- CLASSES 3 AND 4

*Allowed Secured Claims* are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under §506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as an unsecured claim and paid pursuant to Class 5 or Class 6.

Class 3 consists of the Secured Claim of Deutsche Bank based on its first mortgage lien on 80 Pleasant Point Drive, Beaufort, S.C., which is the location of Debtor's landcaping business and residence.The value of the secured claim is the value of the collateral securing the claim in an amount to be determined by the Bankruptcy Court pursuant to §506 of the Bankruptcy Code, with the deficiency balance to be classified as an unsecured Class 6 claim. This creditor's claim is not subject to the anti-modification provision of §1123(b)(5) because it is not secured only by a security interest in real property that is the Debtor's principal residence, rather it is secured by a security interest in real property which is

==and was, at the time the debt was incurred, the location of Debtor's business, as well as Debtor's principle residence.==

Debtor anticipates that the Fair Market Value of the real property securing Deutsche Bank's Class 3 claim will be approximately $200,000.00.

The Plan proposes a single lump sum payment of $10,000.00 comprised of a "new value" to be contribution by Debtor's mother, followed by monthly payments of $1,280.00 based on a twenty year amortization of the FMV at 6% per annum interest, in satisfaction of the Class 3 claim.

Class 4 consists of the secured claim of Sheffield Financial, Inc., which holds a purchase money security interest in a commercial lawn mower used in Debtor's landscaping business, in the amount of approximately $3,115.71, based on its filed Proof of Claim.

The Plan proposes a single lump sum payment of $1,000.00 within Thirty (30) Days of the Effective Date, and quarterly payments of $125.00, until Sheffield Financial's claim has been paid in full with interest at the rate of 6%. The Class 4 claimant shall retain its lien rights under its note and security agreement.

(iii)    UNSECURED CLAIMS – CLASSES 5 and 6

*Unsecured claims* are not secured by property of the estate and are not entitled to priority under §507(a) of the Code.

Class 5 consists of all allowed general unsecured claims of less than $5,000.00. Debtor has Class 5 claims of in the aggregate amount of approximately $5,228. The Plan proposes to make a single lump sum payment equal to approximately 20% of the total of the Class 5 claims within Thirty (30) Days of the Effective Date, and monthly payments in the amount of approximately $81, which includes 6% interest and will pay Class 5 claimants a 100% *pro rata* share of their claims over a five year term.

Class 6 consists of the unsecured deficiency claim of Deutsche Bank based on its lien on 80 Pleasant Point Drive, Beaufort, S.C., which is the location of Debtor's landscaping business and residence. The value of Deutsche Bank's unsecured claim is the excess of the balance of that lien over the value of the collateral securing the claim in an amount to be determined by the Bankruptcy Court pursuant to §506 of the Bankruptcy Code.

Debtor anticpates that the Class 6 claim will be approximately $77,500.00. The Plan proposes payments sufficient to pay 10% of the Class 6 claim with interest at 5.25% over a five year term, estimated to be approximately $150.00 per month commencing within Sixty (60) days of the effective date.

(iv)    UNEXPIRED LEASES/EXECUTORY CONTRACTS – CLASS 7

The Plan lists all *executory contracts and unexpired leases* that the Debtor will assume under the Plan. Assumption means that the Debtor has elected to continue to perform obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. The Plan

also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

Debtor has no unexpired leases or executory contracts.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time. All executory contracts and unexpired leases that are not listed in the Plan will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases. If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

(v)     EQUITY

N/A: Debtor is an individual.

(vi)    DISPUTED CLAIMS

Debtor has no *disputed claims*. The deadline for filing non-governmental claims is October 31, 2013. Further claims review may be required and the Debtor reserves the right to object to claims.

Debtor does not anticipate any other litigation (*e.g.*, preferential transfer, fraudulent conveyance, or lien avoidance actions).

**4. Debtor reserves the right to resort to the "cram down" provisions of section 1129(b) of the bankruptcy code,** *and the filing of the Plan shall constitute a motion for such relief.*

**E.     PROPOSED DISTRIBUTIONS BY CLASS UNDER THE PLAN**

| **DESCRIPTION OF CLAIMS, INTERESTS AND CLASSES** | **DESCRIPTION OF PROPOSED DISTRIBUTIONS UNDER THE PLAN AND IMPAIRMENT** | **ESTIMATED RECOVERY** |
|---|---|---|
| *Allowed Administrative Expense Claim* | *Not Classified Under the Plan; Unimpaired Under the Plan* | **100%** |
| An "Allowed Administrative Expense Claim" is any cost and expense of administration of the Chapter 11 Case entitled to priority in payment under § 507(a)(1) of the Bankruptcy Code, or as may be allowed by Final Order of the Bankruptcy Court. | Except to the extent the holder of an Allowed Administrative Claim agrees otherwise, each holder of an Allowed Administrative Claim shall be paid, in respect of such Allowed Claim, the full amount thereof in Cash (or such other form as is agreed upon by any holder of an Allowed Administrative as practicable after the later of (a) the Effective Date and (b) the date on which such Claim becomes an Allowed Claim. | |
| | Furthermore, all fees payable pursuant to Section 1930 of title 28 of the United States Code shall be paid in full on or before the Effective Date. | |
| *Class 1: Priority Non-Tax Claims* | **N/A** | **N/A** |

Debtor has no Class 1 claims.

| *Class 2: Allowed Priority Tax Claims* | *Not Entitled to Vote on the Plan* | **100% w/ Interest** |
|---|---|---|
| An Allowed Priority Tax Claim is any Claim that is entitled to priority in payment pursuant to §507(a)(8) of the Bankruptcy Code. The Debtor estimates that the amount of Allowed Priority Tax Claims will be $5,411.40 for Pproperty Taxes owed to Beaufort County. | Each holder of an Allowed Priority Tax Claim shall be paid the Allowed Amount of its Allowed Priority Tax Claim in monthly payments sufficient to pay such claim in an a amount equal to such Allowed Priority Tax Claim together with interest at such rate as is required by Section 511 of the Bankruptcy Code or otherwise as required by Section 1129(a)(9)(C) or (D) of the Bankruptcy Code. | |
| *Class 3: Secured Claim of Deutsche Bank lien on 80 Pleasant Pt. Drive, Beaufort, SC* | *Impaired Under the Plan* *Entitled to Vote on the Plan* | **TBD** |
| Class 3 consists of the Allowed Secured Claim of Deutsche Bank Trust Company Americas This obligation shall be treated as a secured collateral for the Allowed Class 4 Claim will not exceed $200,000, based on current tax records. | The Debtor estimates that the value of the obligation of the Reorganized Debtor up to the value of the collateral securing the claim, in an amount to be determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code either at the Confirmation Hearing or earlier upon motion of the Debtor (Option 1), or (ii) as otherwise agreed upon by the Debtor and Deutsche Bank. Deutsche Bank shall retain its lien with the priority thereof as it existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its Allowed Class 3 Claim is fully satisfied, with interest as set forth in the Plan. | |
| *Class 4: Secured Claim of Sheffield Financial, Inc.* | *Impaired Under the Plan* *Entitled to Vote on the Plan* | **TBD** |
| Class 4 consists of the Allowed Secured Claim of Sheffield Financial, Inc. | This obligation shall be treated as a secured obligation of the Reorganized Debtor up to the value the of the collateral securing the claim, in an amount: (i) to be determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code either at the Confirmation Hearing or earlier upon motion of the Debtor, or (ii) as otherwise agreed upon by the Debtor and Sheffield Financial, Inc. | |
| *Class 5: General Unsecured Claims* | *Impaired Under the Plan* *Entitled to Vote on the Plan* | **100% w/ Interest** |
| Class 5 consists of all Allowed General Unsecured Claims of less than $5,000.00. Anticipated to be approximately $5,227.62, in total, based on the scheduled values of such Claims and filed Proofs of Claim. | Pursuant to the Plan, the holders of Unsecured Claims of less than $5,000.00 will receive a lump sum payment equal to approximately 20% of the aggregate of the claims and monthly payments sufficient to pay 100% of the remaning balance of the claims with interest at 5.25%. | |
| *Class 6: Unsecured Deficiency Claim of Deutsche Bank Trust* | *Impaired Under the Plan* *Entitled to Vote on the Plan* | **10%** |

*Company Americas ("DBTC")*

| | | |
|---|---|---|
| Class 6 consists of DBTC's unsecured deficiency claim remaining after determination by the Bankruptcy Court, pursuant to section 506 of the Bankruptcy Code, of the value of DBTC's Class 3 secured claim, or by agreement with Debtor pursuant to the Plan. | Pursuant to the Plan, the holder of the Claim secured by Debtor's business/residential real property will receive payments equal to Ten (10%) percent of the allowed unsecured portion of its claim. | |
| Anticipated to be approximately $77,500.00 based on Beaufort County 2012 Market Value Tax Assessment, DBTC's proof of claim, etc. | | |
| *Class 7: Executory Contracts and Unexpired Leases* | N/A | N/A |
| Debtor has no Class 7 claims. | | |

TO THE EXTENT THAT ANY PROVISIONS OF THIS FIRST AMENDED DISCLOSURE STATEMENT ARE INCONSISTENT WITH THE PROVISIONS OF THE PLAN, THE TERMS OF THE PLAN SHALL CONTROL; PROVIDED, HOWEVER, THAT THE CONFIRMATION ORDER SHALL CONTROL TO THE EXTENT THERE IS ANY INCONSISTENCY BETWEEN THE PLAN AND THE CONFIRMATION ORDER.

### F.  IMPLEMENTING THE PLAN

#### 1.  Source of Payments

Debtor shall fund payments under his plan with disposable earnings from his business and with "new value" contributions from family members.

#### 2.  Post-confirmation Management

N/A: Debtor is an individual.

### G.  WHO MAY VOTE ON OR OBJECT TO THE PLAN

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

A creditor or equity interest holder has the right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both: (1) allowed or allowed for voting purposes *and* (2) impaired. In this case the Plan Proponent believes that holders of Claims in Classes 3-6 may be or are impaired by the Plan and, as such, the Debtor is soliciting votes from holders of Allowed Claims in these classes as set forth in the Plan.

The determination of the acceptance of the Plan is solely based on claimants who actually vote (*i.e.,* file ballots) to accept or reject the Plan. Only claimants with allowed claims or interests shall be entitled to vote.

Notwithstanding the above, under 11 U.S.C. § 1126(f), a class that is not impaired under a plan, and each holder of a claim or interest in such class, are conclusively presumed to have accepted such plan.

The deadline for filing a proof of claim in this case was **September 19, 2013,** for all creditors (except governmental units) and **October 31, 2013,** for governmental units**.**

H. **WHAT IS AN IMPAIRED CLAIM OR IMPAIRED EQUITY INTEREST?**

The holder of an allowed claim or equity interest has the right to vote only if it is in a class that is impaired under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

I. **MISCELLANEOUS PROVISIONS AND DISCLOSURES**

1. **Discharge of Debtor**

Upon completion of payments under the Plan, the Debtor shall be discharged from any debt arising before confirmation of the Plan, as specified in § 1141(d)(5)(A) of the Code. The Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in § 1141(d)(2) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure. After the effective date of the Plan your claims against the Debtor will be limited to the debts described in clauses (i) and (ii) of the preceding sentence. The Debtor may seek a discharge prior to the completion of all payments subject to the provisions of § 1141(d)(5)(B), upon proper motion to the Court.

2. **Modification of the Plan**

The debtor may amend or modify the Plan at any time prior to the entry of an Order confirming the Plan without the approval of the Court. However, the Court may require a new FIRST AMENDED DISCLOSURE STATEMENT and/or re-voting on the Plan. Subsequent to the entry of an Order confirming the Plan, the debtor may modify the Plan at any time, whether or not the plan has been substantially consummated, as provided in § 1127(e).

Upon request of the debtor, the United States Trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

3. **Retention of Jurisdiction**

Subsequent to confirmation of the Plan and the occurrence of the Effective Date, the Court will retain such jurisdiction as provided by the Bankruptcy Code.

4. **Voting Requirements for Acceptance of the Plan**

The Plan will be confirmed if it is accepted by the requisite majorities of each Class of Claims entitled to vote on the Plan and all other conditions to confirmation are met by the Debtor. However, the Debtor will seek to "cram down" the Plan pursuant to § 1129(b) of the Bankruptcy Code on any Class of

claimants that votes to reject the Plan. The requisite majority for confirmation of the Plan by a particular Class without "cram down" is acceptance by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of Allowed Claims that are actually voted.

If the voting members of an impaired Class do not vote unanimously for the Plan but, nonetheless, vote for the Plan by at least the requisite two-thirds (2/3) in amount of Allowed Claims in that Class and one-half (1/2) in number of Allowed Claims actually voted in that Class, the Plan, at a minimum, must provide that each member of such Class will receive property of a value, as of the Effective Date, that is not less than the amount such Class members would receive or retain if the Estate were liquidated under Chapter 7 of the Bankruptcy Code.

The Bankruptcy Court established September 19, 2013 as the deadline by which all proofs of Claim must have been filed in this Chapter 11 Case, except for governmental units. The deadline for governmental units to file a proof of claim is 180 days from the date of the voluntary petition, the order for relief, or conversion, whichever is later, *i.e.,* October 31, 2013.

Whether or not a Claimant votes on the Plan, such Persons will be bound by the Plan, including the terms and treatment of Claims set forth therein, if the Plan is accepted by the requisite majorities of the Classes or is "crammed down" and confirmed by the Bankruptcy Court. Allowance or disallowance of a Claim for voting purposes does *not* necessarily mean that all or a portion of that Claim will be allowed or disallowed for purposes of Distribution under the Plan.

### 5. **Confirmation of the Plan**

Once it is determined which impaired Classes, if any, have or have not accepted the Plan, the Bankruptcy Court will determine whether the Plan may be confirmed. If all impaired Classes accept the Plan, it will be confirmed provided that the Bankruptcy Court finds the other conditions set forth in § 1129(a) of the Bankruptcy Code are satisfied.

To be confirmable, the Plan must meet the requirements listed in § 1129(a) or (b) of the Code. These include the requirements that the Plan be proposed in good faith. The Bankruptcy Code allows for the confirmation of a plan, provided the plan is accepted by at least one impaired class, (without counting votes of insiders) even if the other impaired classes do not accept the plan. In that event, if the plan is not accepted by a class of claimants as set forth above, the Court has the authority to "cram down" the provisions of the plan provided the plan is `fair and equitable' as defined in §1129(b).

If any Class of impaired Claims fails to accept the Plan, the Debtor will seek to effect a "cram down" on such dissenting Class and all Classes that are junior to such dissenting Class under § 1129(b) of the Bankruptcy Code. The Debtor also reserves the right to amend the Plan and request the Bankruptcy Court to confirm the Plan as further amended. If an amendment to the Plan is material, the Debtor may have to re-solicit acceptances from any Class affected by the change(s), unless that Class can be deemed to have accepted or rejected the Plan.

The Plan's treatment of Classes is consistent with the foregoing. Consequently, the Debtor believes that if any of the holders in Classes that are impaired reject the Plan, the Plan may be confirmed over such opposition. Pursuant to § 1129(b) of the Bankruptcy Code, the Debtor will seek Confirmation of the Plan, notwithstanding the possible rejection of the Plan by holders of Claims in any class.

The plan must also distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a Chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the plan. The plan must also be feasible.

These requirements are not the only requirements listed in §1129 and they are not the only requirements for confirmation.

**6. Confirmation Hearing**

A hearing on confirmation of the Plan is scheduled before the Honorable John E. Waites, United States Bankruptcy Judge, United States Bankruptcy Court for the District of South Carolina, 145 King Street, Room 225, Charleston, South Carolina, on _____, 2013 at 9:30 a.m. Announcement of the adjournment or continuance of such hearing, if any, may be made in writing or in open court. No further written notice is required to be sent to claimants, interest holders, or other parties in interest.

**J.    CONFIRMATION OF THE PLAN**

**1. Feasibility**

Section 1129(a) of the Bankruptcy Code requires a judicial determination that confirmation of the Plan will not likely be followed by liquidation or the need for further financial reorganization of the Debtor unless liquidation is contemplated under the Plan. In that regard, the Debtor is confident that there will be sufficient funds available to satisfy the minimum distributions required under § 1129(a)(9) of the Bankruptcy Code and the obligations of the Reorganized Debtor under the Plan from the sources identified in the Plan, including, but not necessarily limited to, the Debtor's projected disposable income.

Debtor's mother has placed funds at the disposal of Counsel for Debtor in an amount sufficient to satisfy the proposed "new value effective-date-payments." Similarly, Debtor's Father has expressed unequivocally both his willingness and his financial ability to supplement Debtor's Projected Monthly Income through "new value" as-needed contributions, in amounts sufficient to meet Debtor's Projected Monthly Expenses (see below).

A calculation of the Debtor's post-confirmation projected disposable income on a monthly basis is set forth below:

| **PROJECTED MONTHLY INCOME and EXPENSES** | |
|---|---|
| **EARNINGS FROM BUSINESS    (AMENDED SCHEDULE I)** | **$1,500 (net)** |
| **NEW VALUE CONTRIBUTIONS FROM PARENTS** | |
| Wiam. Galloway, Sr. (Father) (Up To)    (AMENDED SCHEDULE I) | $2500.00 |
| **TOTAL INCOME:  (Earnings plus Contributions) (Up To)** | **$4000.00** |
| **MONTHLY EXPENSES    (AMENDED SCHEDULE J)** | |
| Non-Real Estate Insurance | $150 |
| Real Estate Insurance & Taxes | $200 |
| Utilities | $285 |
| Food/Entertainment | $350 |
| Clothing | $25 |

| | |
|---|---:|
| **Laundry/Dry Cleaning** | **$15** |
| **Medical/Dental** | **$50** |
| **Transportation** | **$275** |
| **Home Maintenance** | **$50** |
| **Child Support** | **$750** |
| **TOTAL EXPENSES:** | **$2075 .00** |
| **TOTAL AVAILABLE FUNDS (Earnings + Contributions – Expenses =)     (Up To)** | **$1975.00** |
| **PLAN PAYMENT ( INCL. MORTGAGE)\* =** | **$1605.00** |
| **PROJECTED DISPOSABLE INCOME AVAILABLE FOR PLAN** | **$1975.00** |

## 2. Best Interests Test - - Liquidation Analysis

**REAL PROPERTY -  BUSINESS/RESIDENTIAL (SCHEDULE A)**

| | FMV | Net Equity |
|---|---|---|
| **80 Pleasant Point Drive, Beaufort, SC**<br>**TMS # R200-004-000-0289-0000** | **$200,000** | |
| **1st Mortgage -  Deutsche Bank Trust Co. Americas** | **<$277,410>** | **<$77,410>** |

**PERSONAL PROPERTY (SCHEDULE B)**

| | |
|---|---:|
| **1. Cash on hand** | $ 1,000.00 |
| **2. Wells Fargo Business Checking Account**<br>    **William A Galloway d/b/a Sincere Landscapers** | $ 1,200.00 |
| **3. Electric Company Security Deposit SCEG** | $   150.00 |
| **4. Household goods and furnishings** | $ 2,000.00 |
| **5. Books, pictures and other art objects, etc.** | $    50.00 |
| **6. Wearing apparel** | $   300.00 |
| **7. Jewelry: Watch** | $    50.00 |
| **12. IRA** | $ 8,097.99 |
| **13. Stock and interests in businesses**<br>        Sole Proprietor<br>        Sincere Landscapers<br>        80 Pleasant Point Drive<br>        Beaufort, SC | $       -0- |
|    Accounts receivable<br>        Sincere Landscapers<br>        80 Pleasant Point Drive<br>        Ladys Island SC 29907 | $   500.00 |
| **25. Automobiles, trucks, trailers, and**<br>    **other vehicles and accessories.** | |
|      **2000 Chevy K-3500**<br>        **VIN 1GCHK33J2YF455282**<br>        **Mileage:186,193** | $ 6,845.00 |
|      **1993 Lexus GS 300** | $ 1,556.00 |

|  |  |  |
|---|---|---|
| VIN JT8JS47E1P0051006<br>Mileage: 154,000 |  |  |
| **1992 Lincoln Town Car**<br>VIN 1LNLM81W9NY668371<br>Mileage: 189,000 |  | $ 800.00 |
| **1990 Lincoln Town Car**<br>VIN 1LNCM82F8LY793843<br>Mileage: 200,000 |  | $ 500.00 |
| **1993 Ford I-150**<br>VIN 1FTEF15Y2PN89057<br>Mileage:176,000 |  | $ 1,500.00 |
| **Location:**<br>  Sincere Landscapers<br>  80 Pleasant Point Drive<br>  Ladys Island SC 29907 |  |  |
| **28.  Misc. Office Equipment**<br>    1 PC Computer<br>    1 Laptop Computer<br>    1 Printer<br>    2 Desks & Chairs<br>    Misc. Office Equip. |  | $   450.00 |
| **Location:**<br>  Sincere Landscapers<br>  80 Pleasant Point Drive<br>  Ladys Island SC 29907 |  |  |
| **29.  Machinery, fixtures, equipment, and**<br>    **supplies used in Landscaping Business**<br>    Lawnmower - FMV = $800<br>    Various Hand Tools (Rakes, Shovels, Axe, etc.) FMV = < $100]<br>    Tarps, Buckets, Hoses, Etc. [FMV = < $100]<br>    Weed Eaters [FMV = < $400.00]<br>  **Location:**<br>    Sincere Landscapers<br>    Pleasant Point Drive<br>    Ladys Island SC 29907 |  | $ 1,400.00 |
| **TOTALS:** | **REAL PROPERTY:** | <$53,012.00> |
|  | **PERSONAL PROPERTY:** | $24,398.00 |
|  | **EXEMPT PERSONAL PROPERTY:** | < $22,542.99> |
|  | **NON-EXEMPT EQUITY IN THE PERSONAL PROPERTY:** | $1,855.01 |

Debtor has no recent financial statements. The Schedules filed by Debtor identify personal property with a total value of $24,398.00. Debtor has claimed exemptions in the personal property totaling $22,542.99. Debtor does not believe that the non-exempt equity ($1,855.01) in the personal property should be factored into the calculation of the liquidation yield. "New value" contributions from Debtor's parents will likely exceed Debtor's exempt property.

Notwithstanding acceptance of the Plan in accordance with Section 1126 of the Bankruptcy Code, the Bankruptcy Court must find that each member of an impaired class of creditors has accepted the Plan, or will receive or retain property of a value, as of the Effective Date of the Plan, that is not less than the amount such creditor or interest holder would have received or retained if the Estate was liquidated under Chapter 7 of the Bankruptcy Code. The Debtor believes that the Plan complies with this "best interests" test. To determine what Creditors would receive if the Debtor's Estate were liquidated under Chapter 7, the dollar amount that would be generated from the liquidation of the Debtor's assets must be considered.

The amount that would be available for the satisfaction of Claims would consist of the Debtor's interest in the net proceeds resulting from the disposition of the Estate's assets. The Estate's interest would necessarily be reduced by the amount of any secured claims, the costs and expenses of liquidation, and such additional administrative claims and priority claims that may result from the liquidation of the Estate's assets. Based on the negative value of Debtor's real property and nominal value of his other assets, there is no equity from which any of Debtor's creditors can reasonably expect to recover anything approaching the amounts offered through the Chapter 11 Plan.

The Debtor asserts that conversion of the Chapter 11 Case to a case administered under Chapter 7 of the Bankruptcy Code, followed by liquidation, would involve greater expense and risk than the reorganization contemplated by the Plan. For example, conversion of the Chapter 11 Case would require the appointment of a trustee to conduct the liquidation of the Estate. The fees charged by a Chapter 7 trustee and any professionals he or she would hire (such as legal counsel, appraisers, brokers, and the like) could impose additional administrative costs on the Estate that will not be incurred under the Plan, and which would be paid ahead of Allowed Administrative and Priority Claims.

When coupled with the inevitable delay and expense caused by the appointment of a Chapter 7 trustee and retention of the trustee's professionals, distribution to holders of Allowed Claims that would otherwise be made on or after the Effective Date of the Plan necessarily would be delayed for an indefinite period.

3. **Comparison To Anticipated Distributions Under Plan**

In comparison to a realistic hypothetical liquidation analysis, the Plan provides for payment in full of holders of all priority claims, and all allowed Class 5 general unsecured claims. The Plan proposes to pay the Class 4 secured claim of Sheffield Financial, Inc. in full, including a "new value" contribution "lump sum" adequate protection payment of $1,000.00, with full payment of the balance of the "non-valued" debt over a period of thirty-six (36) months, with interest at 5.25%.

Further, Debtor's Plan provides for payment in full of the Class 3 claim secured by Debtor's business/residential real property over a twenty year term with interest at 5.25%, a rate in excess of current market rates. (*See* Appendix to FIRST AMENDED DISCLOSURE STATEMENT, *infra.*) Additionally, the Plan proposes a "new value" contribution "lump sum" adequate protection payment of $10,000.00 to the Class 3 creditor at or shortly after the Effective Date, together with a Ten (10%) payment toward the *unsecured* portion of the real estate creditor's Class 6 claim over a period of only five years, again, as the result of substantial "new value" contributions provided by Debtor's family,

Thus, confirmation of the Plan is clearly preferable to liquidating the Debtor's estate under Chapter 7 of the Bankruptcy Code. Creditors will receive as much or more under the Plan than they would receive in Chapter 7 liquidation.

Accordingly, the Debtor believes that confirmation of the Plan is in the best interests of Creditors and fully complies with the statutory requirements of the Bankruptcy Code.

K.      **FILING OF MONTHLY REPORTS AND PAYMENT OF QUARTERLY FEES**

Debtor is in the process of filing all Monthly Operating Reports and paying all Quaterly Fees now due, and will be current with respect to both requirements by December 20, 2013.

**CONCLUSION**

      FOR THE REASONS SET FORTH IN THIS FIRST AMENDED DISCLOSURE STATEMENT, THE DEBTOR BELIEVES THAT CONFIRMATION AND CONSUMMATION OF THE PLAN IS PREFERABLE TO ALL OTHER ALTERNATIVES. THE DEBTOR THUS URGES ALL CREDITORS ENTITLED TO VOTE TO ACCEPT THE PLAN AND TO EVIDENCE SUCH ACCEPTANCE BY RETURNING THEIR BALLOTS SO THAT THEY WILL BE RECEIVED BY _____, 2013.

Dated: Beaufort, South Carolina
       December 9, 2013

                                              Respectfully Submitted,

                                              */s/ William Allen Galloway*
                                              William Allen Galloway


                                              PHILIP FAIRBANKS, ESQ., P.C.

                                              /s/ *Philip Fairbanks*
                                              Philip Fairbanks   DC Id # 756
                                              1214 King Street
                                              Beaufort, SC 29902
                                              Telephone: (843) 521-1580
                                              Telefax: (843) 521-1590
                                              Attorney for Debtor

First Amended Disclosure Statement    Philip Fairbanks, Esq., P.C.    Page 16
*In re Galloway,* Case No.: 13-02676-jw    1214 King Street
Beaufort, SC 29902
Telephone: (843) 521-1580/Telefax: (843) 521-1590